FILED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2019 MAY 10  PM 1: 02

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA FLORIDA

ANGELA DEBOSE,                                    )
                                                 )
        Plaintiff,                               )
                                                 )
v.                                               )   CASE NO. 8:19-cv-1132-T-30AEP
                                                 )
UNIVERSITY OF SOUTH FLORIDA                      )
BOARD OF TRUSTEES, GREENBERG                     )   JURY TRIAL DEMANDED
TRAURIG, P.A.,                                   )
                                                 )
        Defendants.                              )
_____/

### INDEPENDENT ACTION FOR RELIEF FROM
### JUDGMENT TO REMEDY FRAUD ON THE COURT

Plaintiff, ANGELA DEBOSE ("DEBOSE"), sues Defendants, the UNIVERSITY OF

SOUTH FLORIDA BOARD OF TRUSTEES and GREENBERG TRAURIG, P.A., and files this

independent action for relief from judgment to remedy fraud on the court pursuant to Federal

Rule of Civil Procedure 60(b). In support thereof, DeBose alleges as follows:

### SUMMARY

DeBose came before this court in December 2015 asserting claims against the University

of South Florida Board of Trustees ("USFBOT") for unlawful employment practices including

gender and race discrimination and retaliation in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. §2000e, *et seq.*, as amended ("Title VII") and the Florida Civil Rights Act of

1992, §760.01, Fla. Stat., *et seq.* ("FCRA"); intentional interference with a business relationship;

civil conspiracy; and breach of contract under Florida law. On September 26, 2018, the jury

returned a unanimous verdict in DeBose's favor on her discrimination and retaliation claims.

DeBose was awarded $310,500, $35,000 in costs, and unspecified front pay damages. At all

1

N.P.

relevant times of the litigation, USFBOT engaged in various forms of misconduct to procure favorable judgments through deceit and fraud. As a result, the verdict DeBose won was lost. DeBose asks this Court to right this wrong and states as follows:

## GENERAL ALLEGATIONS

1.      This action arises from a perjury and fraud scheme spearheaded by Gerard Solis, USFBOT General Counsel; Richard McCrea, Greenberg Traurig; USFBOT; Greenberg Traurig, and its employees to violate federal law, including but not limited to suborning perjury, perjury, concealing and withholding discovery, withholding and destroying public records, conspiring to obstruct justice, obstruction of justice, and fraud to procure favorable judgments for themselves and set aside judgments favorable to DeBose. Solis and McCrea sentiently set in motion an unconscionable scheme calculated to interfere with the judicial system's ability to properly adjudicate DeBose's case in chief by unfairly hampering the presentation of her evidence and claims or defenses.

2.      This conspiratorial enterprise has illicit motives: financial gain by avoiding paying damages for its employment discrimination and retaliation against DeBose, a racial minority employed by USFBOT, an arm of state government; to set aside or procure favorable judgments; to avoid court sanctions. The Defendants made a series of false and misleading statements regarding the destruction of DeBose's evidence to corrupt or influence the court to impartially perform its judicial function. Defendants knew or were reckless in not knowing that their statements were false and/or misleading because they did not have an adequate basis in fact for their assertions. Defendants did not satisfy numerous contingencies, such as securing or placing a litigation hold on DeBose's files.

2

3.     All of this comes at the expense of Plaintiff Angela DeBose, by virtue of the

conspiratorial scheme directed by the Defendants to conceal and destroy evidence that they had a

duty to disclose and preserve. The Defendants false and misleading statements and omissions

caused significant confusion and disruption in the proceedings resulting in further harm to

DeBose for exposing governmental agency's diabolical scheme to prevent its unlawful

discriminatory and retaliatory actions and practices from being exposed.

4.     The fraudulent conduct of the Defendants resulted in DeBose being smeared, defamed,

discriminated against, retaliated against, fired, and interfered with by the Defendants'

administrative officials and employees.

5.     Many of the employees who supported DeBose were preyed upon by USFBOT in its

conspiratorial enterprise, including using unsophisticated employees and student workers from

poor or modest backgrounds. Through exploitation of their social inequity and inequality and

lack of representation, they became pawns of the Defendants and unwittingly were used to

violate federal law. The Defendants abused their powers and USFBOT specifically put its

students and employees in jeopardy.

6.     The purpose of this action is to hold the Defendants USFBOT and its co-conspirators and

representatives in Greenberg Traurig, liable for the harm they have wrought on the life and

career of Angela DeBose, who worked for the University of South Florida for over 27 years in

various capacities. DeBose had an illustrious career and was on her way to becoming an

Associate Vice President within her profession in higher education. Defendants willfully set out

to destroy DeBose and her bright future, on account of her race-gender, and used unlawful and/or

illegal means to do so. Based on information and belief and USFBOT employment data, the

injustices DeBose experienced are routinely committed against other blacks and racial minorities by USFBOT and the contractors hired to represent the Board.

7.     USFBOT and Greenberg Traurig defrauded DeBose and conspired to obstruct justice and obstructed justice; Defendants robbed DeBose of her job, career, good name, her jury verdict, and the potential for other damages. After DeBose won her case, USFBOT and Greenberg Traurig, relying on USFBOT's government status, conspired with others to commit fraud in a deplorable scheme, in coordination with federal and state courts.

8.     By engaging in the conduct alleged in this Complaint, USFBOT, Greenberg Traurig, Solis, McCrea, and others violated, and unless restrained will violate again, federal law.

## NATURE OF PROCEEDINGS AND RELIEF SOUGHT

9.     Plaintiff, ANGELA DEBOSE brings this Independent Action for Relief from Judgment to Remedy Fraud on the Court against Defendants, the UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES and GREENBERG TRAURIG, P.A., pursuant to Federal Rule of Civil Procedure 60(b). DeBose seeks declaratory relief and damages for ill-gotten gains, along with prejudgment interest, civil penalties, and such further relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the acts complained of raise federal questions under the Constitution and laws of the United States. This Court also has jurisdiction ancillary to its original exercise of jurisdiction in *Angela DeBose v. University of South Florida Board of Trustees*, et al., Civil Case No. 8:15-cv-02787-EAK-AEP. This Court also has jurisdiction because the amount in controversy exceeds $1,530,500.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because the fraud committed by the Defendants was practiced in this district and the injuries occasioned by the fraud was

4

suffered in this district by the named Plaintiff.  The Defendants transact business in this district and the Defendants directly or indirectly made use of the means, instruments, or instrumentalities of communication or transportation in interstate commerce, or of the mails, particularly during the period relevant to the allegations, in this district.

## THE PARTIES

The Eleventh Circuit wrote in *Atkins v. McInteer*, 470 F.3d 1350, 1358 (11th Cir. 2006) that the ("particularity requirement" for pleading fraud means that a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them").  Plaintiff will support this "particularity requirement" by pleading the following facts:

12.    Plaintiff ANGELA DEBOSE was an employee of USFBOT from January 1988 until August 19, 2015 and at all times material hereto, is a resident of Hillsborough County, Florida.

13.    Defendant University of South Florida Board of Trustees ("USFBOT") is the governing body of the University of South Florida (USF), and public body corporate created by Article IX, Section 7 of the Constitution of the State of Florida.  Defendant USFBOT is based at 4202 E. Fowler Avenue, Tampa, Florida.  At all times material hereto, USF was and is a public university within the State University System of the State of Florida and a "state agency," pursuant to §216.011(1) (qq), Florida Statutes.  The definition of public body presumably includes public universities within the State and records of a State University System higher educational institution, as defined in *National Collegiate Athletic Association v. Associated Press.*  As a public university created and authorized pursuant to the laws of the State of Florida, USFBOT is subject to the provisions of the Government in the Sunshine and Public Records Laws.

14.     At all relevant times, GERARD SOLIS, is a USFBOT employee in the Office of the General Counsel.  Defendant Gerard Solis at all times material hereto, is a resident of Hillsborough County, Florida

15.     Defendant GREENBERG TRAURIG, P.A., is a professional association practicing law in the State of Florida with its principal place of business being in Hillsborough County, Florida. Greenberg Traurig, P.A. entered an agreement with USFBOT for private legal services.  As a Contractor for the University of South Florida, Greenberg Traurig, P.A. provides legal advice and representation.

16.     At all relevant times, RICHARD C. MCCREA, is an attorney at law licensed to practice law in Florida.  Defendant Richard C. McCrea, Jr. at all times material hereto, is a resident of Hillsborough County, Florida.

17.     At all relevant times, Defendant PAUL DOSAL, is a USFBOT employee and DeBose's former supervisor, against whom DeBose filed discrimination charges, and at all times material hereto, is a resident of Hillsborough County, Florida.

18.     At all relevant times, Defendant ALEXIS MOOTOO is a USFBOT employee and at all times material hereto, is a resident of Hillsborough County, Florida.

19.     At all relevant times, Defendant SUZANNE MCCOSKEY-BISHOP is a USFBOT employee in the Office of the Registrar and at all times material hereto, is a resident of Hillsborough County, Florida.

20.     Defendant LOIS PALMER was hired by USFBOT on or around August 17, 2015, as an employee in the Office of the Registrar, and at material times hereto, is residing in Hillsborough County, Florida.

21.     At all relevant times, Defendant VICTORIA JOHNSON (termed) was a USFBOT employee in the Office of Human Resources, and at material times hereto, resides in Hillsborough County, Florida.

22.     At all times material hereto, the Defendants engaged in unconscionable schemes to deceive or make representations through the court system.  The Defendants acted jointly, in concert and as agents of one another, concerning the matters alleged herein, and further ratified the wrongful acts of each other by, *inter alia*, knowingly acting together to conspire to conceal or omit material information not otherwise known or available about the destruction of DeBose's personnel and employment files maintained in the registrar's office.  The Defendants abused their power by commandeering students who worked in the registrar's office to destroy DeBose's files and other public records and contracting with a third party, using state funds from Florida citizens and taxpayers, in violation of Federal Rule of Civil Procedure 37 and other federal law.  Defendants concealed the destruction and misrepresented that no destruction of the records occurred and that the records DeBose alleged were destroyed, did not exist.

23.     When the Defendants made these representations, the Defendants knew them to be false.  However, the representations were made by Defendants with the intent to defraud and deceive Plaintiff.  At the time of the destruction of Plaintiff's employee files, Plaintiff was ignorant of Defendants' action.  Plaintiff could not, in the exercise of reasonable due diligence, have discovered the Defendants' unlawful action.  For what Plaintiff learned, she took appropriate action through the court to protect her interests and preserve her evidence.  Had Plaintiff known the actual facts, she would have realized and made known to the court that its reliance on the Defendants was unjustified.

24.     As a proximate result of Defendants' fraud, deceit, and destruction alleged herein,

Plaintiff was damaged in the sum of $1,530,500.

25.     In doing the acts alleged herein, the Defendants acted with oppression, fraud, and malice,

and Plaintiff is entitled to punitive and treble damages from Greenberg Traurig, in excess of

$1,530,500.

26.     Therefore, this is also a Complaint for damages for $4,591,500. All conditions precedent

have occurred, have been performed, or have been waived, including the notice requirement of

Section 768.28, Florida Statutes.

## THE FACTS

27.     In December 2014, Plaintiff filed a discrimination complaint against the USFBOT with

the Equal Employment Opportunity Commission (EEOC).

28.     In February 2015, Plaintiff filed for a temporary restraining order and/or preliminary

injunction against the USFBOT with the Middle District Court of Florida, Case No. 8:15-mc-

00018-EAK-MAP, and subsequently added a claim of Retaliation to her EEOC complaint.

29.     On March 27, 2015, DeBose sent Defendants a written notice to preserve her evidence.

30.     On May 19, 2015, DeBose received notice of her separation and termination from

USFBOT. At that time, DeBose made a verbal public records request for a copy of her

departmental files, documents from her hard-drive, and her ESI in order to preserve and have in

her possession, evidence to support her complaints and case in chief at trial.

31.     On June 22, 2015, DeBose filed a Petition for Writ of Mandamus to obtain responses to

the public records requests she made orally and in writing to USFBOT.

32.     On August 12, 2015, Solis responded to DeBose's May 19, 2015 public records request

DeBose made to Dr. Kofi Glover. Solis provided DeBose a charge document, seeking to charge

8

DeBose $9,083 to inspect/copy the nonexempt public records she created or maintained during the course of her employment. At the time of Solis's email, and unknown to DeBose, USFBOT had already contracted with a third party to shred DeBose's departmental files. DeBose was not notified of the destruction nor provided a copy of the department files she requested, which would have been, if done inadvertently instead of willfully, a less severe and lawful means of removing DeBose's files.

33.    Defendants knew or had reason to know DeBose's files contained documents and evidence needed to maintain and prove her claims and damages. On behalf of USFBOT, Solis did not provide any responsive records to the public records request DeBose on May 19, 2015.

34.    In his capacity as USFBOT's representative, Richard McCrea had a duty to request a litigation hold on DeBose's records. In his capacity as USFBOT's internal counsel, Solis had a duty to place a litigation hold on DeBose's records. However, McCrea and Solis willfully, without probable cause and without regard to the rights, health, and feelings of the Plaintiff; without right and without consent of the Plaintiff; and wholly against the wishes of the Plaintiff; facilitated the cover up of the destruction of DeBose's files and other similar public records DeBose needed to prove her claims and damages.

35.    It is unreasonable to believe that the Defendants did not anticipate that DeBose would have need of these records; Defendants willfully violated Fed.R.Civ.P. 37 and other laws.

a.    In June 2014, Solis had actual knowledge of the potential for litigation between DeBose and USF. Solis was informed by Dosal that DeBose had complained of discrimination.

b.    In July 2014, Solis had knowledge that DeBose filed an EthicsPoint Complaint.

9

c.      In August 2014, Solis had knowledge that DeBose filed discrimination complaints internally with the USF Office of Diversity, Inclusion and Equal Opportunity.

d.      In December 2014, Solis had knowledge that DeBose filed a charge of discrimination with the EEOC.

e.      In February 2015, Solis and McCrea had knowledge that DeBose filed a TRO and preliminary injunction with the Middle District Court of Florida, Tampa Division.

f.      On March 27, 2015, Solis and McCrea had knowledge of DeBose's preservation notice and her expectation that her records would be available at trial.

g.      On June 22, 2015, Solis and McCrea had knowledge of DeBose's Petition for Writ of Mandamus to obtain her department files and ESI.

h.      On July 1, 2015, Solis and McCrea had knowledge of DeBose's Emergency Preservation Motion in state court action for mandamus relief, *Angela DeBose v. University of South Florida Board of Trustees*, Case No. 15-CA-005663. At all relevant times, Defendants opposed the Plaintiff's motion to preserve her evidence. The Defendants represented to the court that they understood their legal duty to do so and that an order was unnecessary. The Defendants knew of the court's justified but misguided reliance on Defendants' representations that they would protect and preserve DeBose's evidence.

i.      On July 13, 2015, Solis and McCrea had knowledge of DeBose's Preservation Motion in Case 8:15-mc-00018-EAK-MAP to protect her ESI and evidence generally. At all relevant times, Defendants opposed the motion as unnecessary. Defendants were aware of the court's August 6, 2015 order in reliance on Defendants that Defendants knew and understood their duty to protect and preserve DeBose's evidence.

10

j.      In August 12, 2015, Solis and McCrea had knowledge of a written follow-up to her oral May 19, 2015 public records request to Dr. Kofi Glover, who stated he did not recall receiving such a request. If Plaintiff's request was unknown, Defendants could have disclosed the destruction as a mistake, inadvertence, or negligence; however Defendants fraudulently concealed the destruction and did not, at all relevant times disclose that the destruction of DeBose's files had occurred. Furthermore, the Defendants have not at any time produced DeBose's ESI or departmental files through discovery or in response to DeBose's public records requests.

k.      On August 31, 2015, DeBose filed a motion for sanctions in Case 8:15-mc-00018 -EAK-MAP following Solis's statement that telephone records requested from him via DeBose's public records request could not be provided because the "records were transitory" and had been destroyed. Solis and McCrea had knowledge of DeBose's EEOC discrimination and retaliation charges, the litigation underway in 8:15-mc-00018 - EAK-MAP and took no steps to preserve the telephonic records but rather allowed or facilitated their destruction. The Defendants were aware of the court's reliance by virtue of its October 14, 2015 order denying sanctions that Defendants would protect and preserve DeBose's evidence.

l.      On December 4, 2015, Solis and McCrea knew or had reason to know that DeBose, who filed suit in federal court, would request her files and ESI through discovery, to have the documents available at the dispositive phases of the case and for trial.

36.     The Defendants did not preserve DeBose's records but rather willfully, intentionally, and maliciously in bad faith, destroyed them in violation of Fed. R. Civ. P. 37 and other laws.

37.     The Defendants destroyed DeBose's files, knowing that DeBose was entitled to copies of any and all documents requested. The Defendants lied and make false statements to the court, claiming that the destruction was broadly noticed or publicized around the University's campus such that DeBose could have retrieved her files.

38.     USFBOT's use of a third party to destroy DeBose's records was in violation of federal law, including Federal Rule of Civil Procedure 37. Defendants refused to produce documents related to the destruction or identify the third party that carried out the destruction. Defendants thwarted DeBose efforts to subpoena such records.

39.     On July 7, 2016, Defendants answered DeBose's Third Amended Complaint in her federal suit.

    a.     At all times, the Defendants lied, denying in bad faith, having willfully, maliciously, and malignantly destroyed Plaintiff's evidence.

    b.     Defendants denied spoliation of any kind (i.e. First Party and Third Party) but in bad faith made the false claim that DeBose alleged First Party Spoliation so that DeBose's allegation against them would not be actionable.

    c.     As a result of Defendant's false statements of material fact, false averments, and misrepresentations, several of DeBose's meritorious claims for which she was owed damages and should have been compensated, were dismissed.

40.     On November 10, 2016, Carrie Garcia was deposed in Case No. 8:15-cv-02787-EAK-AEP. Garcia denied at deposition that the personnel files maintained in the Office of the Registrar were sent out for shredding.

41.     On November 16, 2016, Paul Dosal was deposed in Case No.  8:15-cv-02787-EAK-AEP. Dosal denied ordering the destruction and also denied that the departmental employee files were shredded.

42.     On November 16, 2016, Alexis Mootoo was deposed in Case No. 8:15-cv-02787-EAK-AEP. Mootoo, who gave the order to Suzanne McCoskey Bishop to "get rid of the files" on Dosal's behalf, also denied knowledge of the shredding.

43.     Following the depositions, DeBose obtained evidence of the Defendants fraud, having learned from Bushe-Whiteman that Defendants used student workers to carry out the destruction of DeBose's files and the other files in the department.  DeBose obtained and submitted the Affidavits of Delonjie Tyson ("Tyson") and Vanessa Centelles ("Centelles").

44.     On November 22, 2016, Centelles provided her affidavit, attesting to her direct knowledge of seeing DeBose's files put in the shred bins and being ordered to do so by Suzanne McCoskey Bishop ("McCoskey Bishop").

45.     On November 23, 2016, Tyson provided her affidavit, attesting to their direct knowledge and also being commandeered by McCoskey-Bishop to put the employee files into the shred bins.

46.     Centelles stated she saw and handled DeBose's files.  Tyson and Centelles stated that DeBose's files were put in the shred bins along with the others by the students, after being ordered by McCoskey-Bishop to do so.  Centelles and Tyson stated the department employee files were put in bins for shredding in early summer 2015, a short time after DeBose left the registrar's office.

47.     In December 2016, the Defendants were notified by DeBose's counsels of a pending motion for sanctions.

48.     On December 29, 2016, Solis summoned McCoskey Bishop to the USF Office of the
General Counsel about the departmental files.

49.     McCoskey Bishop, upset when she returned to the Office of the Registrar, was overheard
by several employees, saying she would not take the blame for the destruction of the files.

50.     On January 20, 2017, Bushe-Whiteman informed DeBose that McCoskey Bishop would
be changing her story: After her meeting with Solis, McCoskey Bishop would state that
"Victoria [Johnson]" in HR told her that it was okay to shred the records. McCoskey Bishop
would not name Mootoo or Dosal as having ordered the shredding of the files.

51.     On January 23, 2017, Defendants opposed the motion for sanctions and submitted
affidavits from McCoskey Bishop, Lois Palmer, and Victoria Johnson, attesting to the story in
the manner that Bushe-Whiteman warned.

52.     In scripted affidavits written by the Defendants, McCoskey Bishop, Lois Palmer, and
Victoria Johnson falsely stated that the shredding occurred in October 2015 (Fall) and not the
Summer 2015. McCoskey Bishop, Lois Palmer, and Victoria Johnson submitted perjured
statements that Lois Palmer, the *new* registrar, ordered the shredding.

    a.      To induce the court that Defendants should not be sanctioned, Defendants falsely
    misrepresented the timing of the shredding to avoid circumstantial evidence of the
    continuing recurrence of retaliation against DeBose, in close proximity and successive
    months after DeBose's discrimination, retaliation, and MDF complaints.

    b.      To induce the court that Defendants should not be sanctioned, Defendants lied
    about Lois Palmer, who was not present at USF at all relevant times during the shredding,
    to imply a nondiscriminatory, nonretaliatory reason for the shredding: *"I was surprised to*
    *discover a large number of files in an unsecured cabinet in a common area of the*

14

*Registrar's Office on the USF Tampa campus.  The cabinet contained what appeared to be copies of employee personnel records for both current and former employees...I was concerned that a number of files contained records associated with Family Medical Leave, which I consider to be sensitive employment records.... I was able to confirm that the materials were duplicative of records kept in the Official University Personnel file in Central Human Resources....the files were shredded per my instructions within thirty days of being placed in the shred bins.*"

    c.    Palmer falsely stated that she was present during the shredding to aid the Defendants in committing fraud on the court;

    d.    Palmer was not appointed University Registrar until August 17, 2015, after the shredding had already occurred;

    e.    The shredding was not "routine" but a first-time mass shredding of files maintained on current and former employees since the 1960s.

53.    DeBose's counsel submitted the affidavits of Verna Glenn, Barbara Lamphere, and Kim Bushe-Whiteman who refuted the false statements proffered by the Defendants.  Bushe and Lamphere stated that the files included documents that were not maintained by Human Resources. Lamphere stated other USF departments maintain similar records for their employees.  Bushe and Lamphere stated the files were in locked lateral filing cabinets in a private office, located in the Registrar's Office.  Glenn stated she was not notified of the destruction as the Defendants claimed and that her medical records provided pursuant to her use of sick/FMLA were destroyed.

54.    On February 7, 2017, fourteen (14) days later, USFBOT filed a second round of affidavits from McCoskey Bishop, Palmer, and Johnson expressing new-found uncertainty that

the destruction actually included DeBose's records to induce the court to believe that the student workers, Centelles and Tyson, got it wrong.

55.     At the February 8, 2017, the Defendants stipulated that "everything was destroyed."[1]  The magistrate stated it would be noted for the record."[2]  At all relevant times, Defendants denied the destroyed documents included contracts and other related documents that could be used as evidence at trial. Through lies, fraud, and deceit, the Defendants induced the court to believe that USFBOT stopped using written contracts in 2005.  Additionally, in DeBose's state court proceeding 15-CA-005663, the Defendants deceitfully and fraudulently held out to the state court that DeBose's ESI and electronic files were not provided because DeBose failed to pay the $9,083 cost; Defendants have neither admitted nor conceded in state court that the public records were in fact destroyed.

56.     On March 8, 2017, DeBose moved the court to allow oral testimony from Bushe-Whiteman, Marquisha Wilson, and Willette Roach at hearing scheduled on March 21, 2017, on Plaintiff's Motion for Sanctions, to testify to their direct knowledge that:

a.      Alexis Mootoo visited the Office of the Registrar and ordered Suzanne McCoskey Bishop to have DeBose's and the other departmental employee files shredded.

b.      Mootoo stated that "Dr. Dosal" ordered that the files be destroyed.

c.      Mootoo was working with Dosal to help him fire DeBose.

d.      Mootoo ordered McCoskey Bishop to "get rid of all the files—not just Angela's."

e.      In June or July 2015, McCoskey-Bishop ordered approximately ten student workers in the Office of the Registrar to put all employee files in the shred bins for destruction.

---

[1] See February 8, 2017 hearing transcript, (Doc. No. 202) [35:11-24, 17:20].
[2] February 8, 2017 hearing transcript, (Doc. 202) [39:17-20].

57.    At all relevant times, Defendants opposed the oral testimony of Bushe-Whiteman, Wilson, and Roach.

58.    On March 21, 2017, the Defendants again stipulated at hearing that "everything was destroyed."[3] At all relevant times, Defendants denied the destroyed documents included contracts and other related documents that could be used as evidence at trial. Through lies, fraud, and deceit, the Defendants induced the court to believe that USFBOT stopped using written contracts in 2005.

59.    On May 23, 2017, the Court again held a hearing on Plaintiff's motion for sanctions. The Defendants falsely represented to the court that they only denied the destruction as to Paul Dosal. The Defendant stated the court should find them negligent or grossly negligent in destroying Plaintiff's evidence. As USFBOT's counsels, Solis and McCrea understood that a claim of negligence against the state agency would fail against a sovereign immunity defense.

60.    The court took nearly three months to rule on the motion for sanctions. On August 7, 2017, the court denied the motion. The court stated it found Palmer's statement credible.

61.    On April 12, 2018, Bushe-Whiteman submitted a sworn statement to the Tampa Police Department ("TPD") that Mootoo had been helping USFBOT officials with trying to get rid of DeBose. Bushe-Whiteman stated that Mootoo informed her in June 2014 that DeBose was going to be fired. Bushe-Whiteman also testified the filing cabinets containing the records were not in an unsecure location but locked and kept in her private office. Bushe-Whiteman's statement implicated Mootoo and Dosal in the destruction. Bushe-Whiteman made a connection to the destruction and Dosal's plans to "get rid of Angela" in June 2014. Bushe-Whiteman corroborated the information she provided to DeBose in her affidavit and several text messages.

---

[3] March 21, 2017 hearing transcript (Doc. 222) [19:11-20].

62.     On July 18, 2018, Delonjie Tyson, Verna Glenn, and Barbara Lamphere were deposed.

63.     At deposition, Tyson testified that the shredding occurred in the Summer of 2015 – and not late Fall. Tyson also stated that the registrar at the time the personnel files were destroyed was Carrie Garcia. Tyson identified Zayna James as another student worker who had knowledge of the shredding in the summer of 2015, and who also assisted with placing the personnel files in the shred bins. Tyson reaffirmed that Lois Palmer was not at USF during the shredding incident in a third Affidavit filed on February 24, 2019.

64.     DeBose subsequently requested to depose Palmer, McCoskey Bishop, and Johnson. However, on July 10, 2018, the Defendants immediately filed a Motion for Protective Order.

65.     On July 30, 2018, Plaintiff filed a motion to strike the January 23, 2017 and February 7, 2017 affidavits of Palmer, McCoskey Bishop, and Johnson as a sham and requested an evidentiary proceeding to establish whether or not Palmer was the registrar when the shredding of DeBose's files occurred and whether Palmer ordered the destruction of all of the files, as she claimed. The court did not hold a hearing and denied the motion to strike. The court, at all relevant times, induced by Defendant's misrepresentations, unreasonably relied on the affidavit submitted by Palmer, failing to properly and impartially adjudicate the matter--unfairly hampering the presentation of the Plaintiff's claims pursuant to the motion to strike.

66.     In the push to trial, the court granted the Defendants' motions in limine to exclude any mention of the destruction of Plaintiff's files or Plaintiff's public records requests for her files and ESI. The court denied Plaintiff's motions for an adverse inference and for a stipulation concerning the destruction.

67.     On September 26, 2018, following a two-week trial, the jury returned a verdict in DeBose's favor on her disparate treatment discrimination and retaliation claims for $310,500.

68.     On November 21, 2018, the clerk taxed costs for DeBose of $35,325.

69.     On December 11, 2018, at an evidentiary hearing on front pay, the court determined that

DeBose would be awarded front pay, at a minimum of two years and a maximum of no more

than five years. DeBose submitted evidence to show that USFBOT still used written contracts,

contrary to the false statements made by Defendants that USFBOT stopped using written

contracts in 2005. DeBose presented the 2019 contract extension of Dr. Ralph Wilcox, USF

Provost, and Dr. Paul Dosal, USF Vice Provost and DeBose's former supervisor. DeBose's

breach of contract claims were dismissed based on the Defendants' false statements,

nondisclosure of DeBose's contracts in HR's possession, and destruction of DeBose's copies

maintained in her department personnel files. The Defendants falsely stated at hearing that

contracts are no longer offered for DeBose's classification. Plaintiff presented evidence that she

and Dosal had the same Professional classification. Defendants fraudulently concealed from the

court that their assertions were based on DeBose's racial classification. The court excluded at

summary judgment statistical evidence and expert testimony to show that USFBOT

discriminates against DeBose's protected classification (black females/blacks) in all phases of

employment.

70.     On February 14, 2018, the court overturned the jury verdict and reversed judgment in

USFBOT's favor. The court granted USFBOT's motion for judgment as a matter of law (JMOL)

and motion for conditional trial. The court also entered a Second Amended Judgment in favor of

USFBOT on Plaintiff's retaliation claim, stating

71.     On February 15, 2018, the court reversed the award of front pay and costs.

72.     The court stated, "*DeBose takes nothing.*"

19

73.     On February 18, 2018, the court ordered the parties to mediate. The Defendants tainted the mediation, submitting an ex parte communication that contained false statements to sway or influence the mediation and force Plaintiff to settle for an unfair amount.

74.     On February 24, 2019, DeBose filed a motion to set aside the judgment or alternatively for a new trial.  Plaintiff needed only to show that the evidence is sufficient to support one cause of action to prevail on her motion for new trial; or conversely, unless Defendant prevailed on each theory of liability, the Eleventh Circuit has held, the case must be remanded for a new trial. *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1099 (11th Cir. 1983).

75.     DeBose presented substantial testimony and evidence admitted at trial.  Additionally, DeBose filed the February 20, 2019 affidavit of Delonjie Tyson to show that the Defendants were not entitled to JMOL in that Defendants did not establish their claims and defenses in the case by unimpeached testimony or disinterested witness as evinced by the destruction of DeBose's evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). Palmer gave contradictory, false testimony.  Palmer lied about her presence and giving the order for the destruction. The Defendants induced the court to believe that Palmer was credible, in admitting to ordering the destruction inadvertently, mistakenly or negligently.  However, the Defendants fraudulently concealed Palmer's employment with Ellucian, Palmer's knowledge of DeBose's EEOC complaint, Palmer's negotiation with USFBOT to replace DeBose prior to DeBose's termination, Palmer's start date, and that Palmer would have obtained Dosal's approval to carry out the massive destruction of all the files.  The errors and omissions were committed through fraud on the courts.

76.     On April 24, 2019, the court denied Plaintiff's motion to set aside the judgment to USFBOT and denied Plaintiff's motion for new trial. The court denied Plaintiff, who won the

jury verdict. Notwithstanding the court's action to overturn the jury's verdict, Plaintiff is still the prevailing party on her disparate treatment discrimination claim. Nevertheless, the court denied Plaintiff's motion for new trial. The errors and omissions were committed through fraud on the courts.

77.     In March 2019, DeBose located student worker, Zayna James, who provided DeBose her affidavit. In her affidavit, Zayna James definitively stated that Lois Palmer was not the Registrar when the personnel files were destroyed; Carrie Garcia was Acting Registrar: "*Although I do not remember much more, I do remember that the acting registrar, Carrie Garcia, was in charge of the office after Ms. DeBose left. Ms. Garcia was in charge when the files were shredded. I worked in the registrar's office when Ms. Garcia was replaced with Ms. Lois Palmer; this happened a few months after the shredding.*"

78.     The Defendants fabricated and manufactured a false story and thereby committed fraud upon the courts. The Defendants understood that if Palmer was not there, Palmer's, McCoskey Bishop's, and Johnson's affidavits would be stricken or disbelieved. The Defendants understood that Dosal's, Mootoo's, and Garcia's false, misleading, perjurious deposition testimony to deny or disclaim knowledge of the shredding of DeBose's files, would be disbelieved.

79.     The Defendants willfully, maliciously, self-servingly, and fraudulently suborned perjury from Defendant USFBOT's employees. The employees went along from a self-serving interest to protect their employer and their employment.

80.     The Defendants unlawfully refused to furnish DeBose with copies of the records in her files and when DeBose persisted, the Defendants willfully abused its power to commandeer innocent student workers and an unsuspecting third party to violate federal law.

81.     The files existed and contained documents that would have proven DeBose's employment status, employment contracts, and strong qualifications for the Assistant/Associate Vice President of Enrollment Planning & Management position.

82.     The Defendants falsely and maliciously claimed the documents were nonexistent.  The Defendants falsely and willfully stated that no such destruction of any sort occurred of DeBose's employee files or the files of other USF registrar office employees.  The Defendants' concealment, nondisclosure, and misrepresentations were not done through inadvertence, mistake, or negligence.  The Defendants acted willfully and maliciously, without regard for the rights of DeBose, but did so for their own financial gain and reputation.

83.     The Defendants made multiple materially false statements that, taken together, left the court with false and misleading impressions about the destruction of DeBose's evidence and Palmer.  The Defendants, including Palmer, knew or were reckless in not knowing that their statements were false and misleading.  The Defendants statements were willful, intentional, voluntary, and fraudulent.  The Defendants did not disclose any material facts that were known to them about the destruction when it actually occurred.  The Defendants omitted material information or facts that they had a duty to disclose.  Despite numerous inquiries, pleadings, hearings on February 8, 2017, March 21, 2017, and May 23, 2017 on Plaintiff's motion for sanctions, and similar opportunities to clarify what happened to DeBose's files, the Defendants kept silent, to prevent the information from coming to light.

## COUNT I – FRAUD ON THE COURTS

84.     Plaintiff re-alleges and re-avers paragraphs 1 through 80 above and sets forth the same with equal force, as if stated fully herein.

85.     Based on her information, knowledge, and belief, DeBose alleges her department files included her employment contracts, including but not limited to her 2015 contract and 2019 contract extension, appointment status forms, offer letters, leave and attendance, absence, projects, certificates, letters of commendation, and other similar records.

86.     Based on DeBose's knowledge and belief, her department files contained records that cannot be duplicated by Human Resources or any other USFBOT department.

87.     DeBose's files also contained documents that were "personnel-related" or "records estimated for a potential lawsuit", and therefore should have been retained.

88.     The Defendants did not preserve DeBose's records but willfully destroyed them. DeBose's records should have been retained under state and federal law.

89.     The records were discoverable under Fed.R.Civ.P. 37.

90.     DeBose was entitled to copies of any and all documents requested.

91.     The Defendants abused their power and used its student employees to destroy DeBose's records in violation of federal law.

92.     The Defendants unlawfully refused to furnish DeBose with copies of the records she previously maintained in the course of her employment and pertinent to litigation against her employer.

93.     The six Affidavits advanced in support of USFBOT's claims and defenses from Palmer, McCoskey Bishop, and Johnson were intended to, and ultimately did, cover-up and suppress conclusive evidence that Defendants willfully, intentionally, maliciously, and malignantly destroyed DeBose's files.

94.     Moreover, the Affidavits advanced in support of USFBOT's claims and defenses were intended to, and ultimately did, set up for the Defendants favorable judicial rulings built on

fraudulent statements that Palmer was the registrar at the time and ordered the destruction, when in fact she was not yet hired or present at USF.

95.    The Affidavits advanced in support of USFBOT's claims and defenses were intentionally and knowingly false when made or were made in reckless disregard of whether the statements contained therein were true or false.  Palmer, McCoskey Bishop, and Johnson acted with the knowledge of the falsity of statements in the Affidavits scripted by Solis and McCrea or with reckless disregard for the truth or falsity of their statements.  The falsity of the statements is apparent upon reading the documents.

96.    The Defendants believed the court would not sanction them, even though sanctions were clearly warranted.  The Defendants intended that the courts would rely upon their false statements and honor their false statements and deny DeBose any evidence to put on at trial, to which she was lawfully entitled.  The Defendants further intended that the courts would enter judgments in their favor and that appellate courts would rely upon Defendants' false statements to affirm judgments that were favorable to them.  Likewise, the Defendants intended that the courts would reverse DeBose's judgments.

97.    By the forgoing conduct, the Defendants practiced a fraud on this Court and other federal and state courts.

98.    The Defendants' fraud on the courts is manifestly unjust and shocks the conscience.  The Defendants' fraud directly harmed DeBose who was forced to march through a series of appeals to defend her jury verdict and judgment, ultimately lost her judgment, and had retribution taken against her for rejecting unfair settlements for far less than she was entitled.  Moreover, the Defendants' fraud was intended to and did subvert the processes of this Court and the Court of Appeals.

99.    As a result of the Defendants' fraud on the courts, DeBose was deprived of the judgment to which she was lawfully entitled and suffered substantial loss for which she should be compensated in damages. The Second Amended Judgment and/or Judgment as a Matter of Law ("JMOL") the court entered in favor of USFBOT after wrongly setting aside DeBose's judgment, is tainted by the Defendants' fraud, and is no bar to Plaintiff's relief pursuant to this Court's authority under the Federal Rules and the Court's inherent powers.

100.    The proper measure of the Plaintiff's damages for the Defendants' fraud on the courts is the amount DeBose is entitled to pursuant to the judgment, increased to present value at a market interest rate in order fully and fairly to compensate Plaintiff for her loss. Such damages are in excess of $550,000.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, interest, costs, prejudgment interest, and for such other relief as the Court deems fair and just. By reason of the Defendants' fraud on the courts, the Plaintiff respectfully asks the Court to:

a.    Rule that USFBOT, through Gerard Solis, Lois Palmer, and other defendants, and Greenberg Traurig, through Richard McCrea, perpetrated a fraud on the federal courts in the *Angela DeBose v. University of South Florida Board of Trustees*, et al. (Case No. 8:15-cv-02787 -EAK-AEP);

b.    Award Plaintiff (1) compensatory damages of $300,000 for four years of pain and suffering caused by Defendants' deceit and fraud; (2) other damages of $310,500 for the defendants fraud, (2) costs of litigation estimated at no less than $35,000, (3) unrecovered fees of $30,000, and (4) lost compensation of $175,000—all including interest at a market rate since September 2018;

25

c.    Award Plaintiff (5) opportunity damages for AVP EPM position of $90,000 and

(6) contract damages of $590,000—including interest at a market rate since June 2015

when DeBose's records were destroyed; and (7) further relief as this Court deems fair and

just.

**WHEREFORE,** Plaintiff demands judgment against the Defendants for damages,

interest, costs, prejudgment interest in excess of $1,530,500 (one million, five hundred thirty

thousand, five hundred dollars), and for such other relief as the Court deems fair and just.

Respectfully submitted this **9th** day of May, 2019.

/s/ Angela DeBose

Angela DeBose, Plaintiff

1107 W. Kirby Street
Tampa, FL 33604
813-932-6959